b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

LOUISIANA COLLEGE D/B/A          CIVIL DOCKET NO. 1:23-CV-00928
LOUISIANA CHRISTIAN
UNIVERSITY,
Plaintiff

                                 DISTRICT JUDGE EDWARDS
ERSUS

LUBBOCK CHRISTIAN
UNIVERSITY,                      MAGISTRATE JUDGE PEREZ-MONTES
Defendant

---

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant Lubbock Christian University ("Lubbock CU"). ECF No. 16.

Because Plaintiff has not shown that Lubbock CU has minimum contacts with Louisiana, it is recommended that Lubbock CU's Motion to Dismiss (ECF No. 16) be GRANTED and that Plaintiff's Complaint be DISMISSED WTIHOUT PREJUDICE.

## I.  Background

Plaintiff Louisiana College, doing business as Louisiana Christian University ("Louisiana CU") filed this action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a)[1] and the Lanham Act, 15 U.S.C. § 1125, declaring that Louisiana CU has not infringed on Lubbock CU's trademarked logo, "LCU."

---

[1] The Declaratory Judgment Act, 28 U.S.C. § 2201(a), is an enabling act that confers discretion on the courts, rather than an absolute right on a litigant. *See Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (*citing Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995)). The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of

II.    <u>Law and Analysis</u>

    A.    <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof. *See Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982) (citing *Southwest Offset, Inc. v. Hudco Publishing Co.*, 622 F.2d 149, 152 (5th Cir. 1980)). "The plaintiff . . . need only make a prima facie case if the district court rules without an evidentiary hearing." *Johnston v. Multidata Systems International Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.'" *Johnston,* 523 F.3d at 609 (quoting *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 546 (5th Cir. 1985)).

    B.    <u>The Court does not have personal jurisdiction over Lubbock CU.</u>

Louisiana CU is a citizen of Louisiana.[2]    Lubbock CU is a Texas non-profit company with its principal place of business in Texas.  ECF No. 22 at 10.

---

litigants. *See Sherwin-Williams Co.*, 343 F.3d 383, 389 (*citing Wilton,* 515 U.S. at 286).  In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration. *See Sherwin-Williams Co.*, 343 F.3d 383, 389 (*citing Wilton,* 515 U.S. at 289).  There is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action. *See Wilton,* 515 U.S. at 288.

[2] According to the Louisiana Secretary of State, Louisiana CU is the trade name for Louisiana College, which is a Louisiana non-profit corporation.  Louisiana CU registered its trade name on November 1, 2021.  Its principal place of business is in Louisiana.

Lubbock CU contends this Court lacks both general and specific personal jurisdiction. Louisiana CU contends this Court has personal jurisdiction over Lubbock CU because: (1) Lubbock CU is registered to do business in Louisiana; and (2) it sent five cease and desist letters to Louisiana CU.

### 1.    Personal jurisdiction is established through minimum contacts.

"The party seeking to invoke the court's jurisdiction has the burden to establish it is proper." *Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, L.L.C.*, 717 Fed. Appx. 394, 395–96 (5th Cir. 2017) (citing *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *cert. den.*, 548 U.S. 904 (2006)).[3]

Personal jurisdiction in federal court is governed by the law of the state in which the federal court sits. *See Bulkley & Associates, L.L.C. v. Department of Industrial Relations, Division of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). "A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Head v. Las Vegas Sands, L.L.C.*, 760 Fed. Appx.

---

[3] "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

281, 284 (5th Cir. 2019) (citing *Gulf Coast Bank & Trust Co.*, 717 Fed. Appx. at 396; *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009); *Johnston*, 523 F.3d at 609).

Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. *See* La. Rev. Stat. Ann. § 13:3201. Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the non-resident Defendant comports with federal due process.

Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *See Johnston*, 523 F.3d at 609; *see also International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

"For there to be minimum contacts, a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.' That requirement is the 'constitutional touchstone' of personal jurisdiction." *Carmona*, (citing *Burger King*, 471 U.S. at 474); *see also Diece-Lisa Industries, Incorporated,* 943 F.3d at 249-50. It "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Carmona*, 924 F.3d at 193-94 (citing *Burger King*, 471 U.S.

4

at 475); *see also Diece-Lisa Industries, Incorporated,* 943 F.3d at 250.  That is, the plaintiff cannot supply "the only link between the defendant and the forum." *Carmona*, 924 F.3d at 194 (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "Jurisdiction is proper only when 'defendant himself' made deliberate contact with the forum." *Id.*

There are two types of minimum contacts: those that give rise to general personal jurisdiction and those that give rise to specific personal jurisdiction.  *See Johnston*, 523 F. 3d at 609 (*citing Lewis v. Fresne,* 252 F. 3d 352, 358 (5th Cir. 2001)); *see also Diece-Lisa Industries, Incorporated v. Disney Enterprises, Incorporated,* 943 F.3d 239, 250 (5th Cir. 2019); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

"A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Head*, 760 Fed. Appx. at 284 (citing *Sangha*, 882 F.3d at 101).

"Specific jurisdiction exists 'when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Head*, 760 Fed. Appx. at 284 (citing *Sangha v. Navig8 Ship Management Private Limited*, 882 F.3d 96, 101 (5th Cir. 2018)).  Specific jurisdiction is also called "case-linked" jurisdiction.  *See Bristol-*

*Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017).

2.    <u>This Court does not have general jurisdiction over Lubbock CU.</u>

Louisiana CU contends this Court has general jurisdiction over Lubbock CU through its "continuous and systematic" contacts with Louisiana. Louisiana CU contends that Lubbock CU is authorized to do business in Louisiana and that it has a Louisiana agent for service of process. However, Lubbock CU contends it filed an application to withdraw its application to do business in Louisiana in April 2024, after this action was instituted. ECF No. 29.

General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. *See Johnston*, 523 F.3d at 609 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–19 (1984)). A court may exercise general personal jurisdiction over a defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (*quoting International Shoe Co.*, 326 U.S at 317). A corporation is generally "at home" in the state(s) of its incorporation and its principal place of business. *See BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

"The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Bowles v. Ranger Land Systems, Inc.*, 527 Fed. Appx. 319, 321 (5th Cir. 2013) (*citing Submersible*

6

*Systems, Inc. v. Perforadora Central, S.A. de C.V.,* 249 F.3d 413, 419 (5th Cir. 2001), *cert. den.,* 534 U.S. 1055 (2001); *see also Johnston*, 523 F. 3d at 609. "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Bowles,* 527 Fed. Appx. at 321 (*citing Johnston,* 523 F.3d at 609). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.*

"General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston*, 523 F.3d at 610 (quoting *Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 717 (5th Cir. 1999), *cert. den.,* 531 U.S. 917 (2000)). The contacts must be reviewed *in toto,* not in isolation from one another. *See Johnston*, 523 F.3d at 609–10 (*citing Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 779 (5th Cir. 1986), *cert. den.,* 481 U.S. 1015 (1987)). Vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction. *See Johnston*, 523 F.3d at 609–10 (*citing Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 596 (5th Cir. 1999)).

Louisiana CU has not shown that Lubbock CU has sufficient contacts with Louisiana to be subject to this Court's general jurisdiction. "In similar cases involving the issue of personal jurisdiction over an out-of-state educational institution, courts have unanimously determined that the institution is not subject to general personal

7

jurisdiction where its only contacts with the forum state are its involvement in activities that are typical of a nationally prominent university." *American University System, Inc. v. American University*, 858 F. Supp. 2d 705, 713–14 (N.D. Tex. 2012) (citing *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 541–43 (3d Cir. 1985) (no general jurisdiction despite evidence that medical college enrolled 6% of its students from the forum state, received several hundred thousand dollars of tuition from residents of the forum state, toured cities in the forum state, and established a joint international program with a forum state college)). "Evidence that a university recruits or admits students from the forum state, employs forum residents, receives revenue from the state in the form of tuition or fundraising, or has contacts with prospective students and alumni in the state is simply insufficient to support the exercise of general jurisdiction." *American University System, Inc.*, 858 F. Supp. 2d at 714 (citing *Richards v. Duke University,* 480 F. Supp. 2d 222, 230 (D.D.C. 2007)).

Warren O'Neil ("O'Neil"), Vice-President of Marketing at Lubbock CU, testified that the school sells apparel bearing its name and  logo which could end up in Louisiana.  ECF No. 22-1 at 16.  However, the Chap (mascot) store manager on campus did not have any record of a sale in Louisiana.  ECF No. 22-1 at 17-18.  O'Neil also testified that neither Lubbock CU, nor anyone affiliated with it, had performed any services, or hosted any events (including alumni and recruiting meetings, and education or training presentations) in Louisiana.  ECF No. 22-1 at 19-20.  A touring musical group from the Lubbock CU campus made one stop to perform in Louisiana

within the last seven years.  ECF No. 22-1 at 33-34.  Within the last seven years, Lubbock CU has not engaged in any recruiting activities in Louisiana, and has not participated in any athletic contests in Louisiana.  ECF No. 22-1 at 34.

O'Neil further testified that Lubbock CU's admissions advisors do not travel to career fairs or other such events in Louisiana, and do not make recruiting phone calls to students.  ECF No. 22-1 at 26.  However, student athletes are recruited directly. ECF No. 22-1 at 26-27.  O'Neil testified that he did not have any knowledge about the Lubbock CU athletic department's recruiting visits in Louisiana.  ECF No. 22-1 at 31.  Lubbock CU does not own any real estate in Louisiana.  ECF No. 22-1 at 33.

O'Neil's testimony shows that Lubbock CU did not engage in any purposeful business activity in Louisiana.  The one-time musical event is too attenuated to constitute purposeful business activity in Louisiana.

Louisiana CU contends that Lubbock CU's registration to do business in Louisiana includes a consent to personal jurisdiction in Louisiana.  Lubbock CU is registered to do business in Louisiana and has an agent for service of process – CT Corporation System – in Louisiana.  ECF No. 22-10.  Lubbock CU asserts that it filed an application to withdraw its right to conduct business in Louisiana on April 24, 2023, but that application has not yet been granted.  ECF No. 29 at 3.  The Louisiana Secretary of State's web site shows there is a "withdrawal pending."

It is well-settled that "[a] corporation's qualification to do business in the forum state and service on its registered agent in the state 'is of no special weight in

9

evaluating general personal jurisdiction.'"  *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir. 1992), *cert. den.*, 506 U.S. 1080 (1993) (citing *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir. 1971), *cert. den.,* 404 U.S. 948 (1971) ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another.").  "[T]he mere act of registering an agent does not create [a] general business presence" in a state and "does not act as consent to be hauled into [the state's] courts on any dispute with any party anywhere concerning any matter."  *Wenche Siemer,* 966 F.2d at 183; *see also Gulf Coast Bank & Trust Co.,* 717 Fed. Appx. at 398; *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).[4]  "The statute governing personal jurisdiction only purports

---

[4] Louisiana CU argues that *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 138 (2023) mandates a finding of general jurisdiction over Lubbock CU.  In *Mallory*, the United States Supreme Court explained:

> [A]ll *International Shoe* did was stake out an *additional* road to jurisdiction over out-of-state corporations.  *Pennsylvania Fire* held that an out-of-state corporation that *has* consented to in-state suits in order to do business in the forum is susceptible to suit there.  *International Shoe* held that an out-of-state corporation that *has not* consented to in-state suits may also be susceptible to claims in the forum State based on "the quality and nature of [its] activity" in the forum.

The *Mallory* Court held that an out-of-state corporation that has expressly consented to in-state suits in order to do business in the forum is susceptible to suit there, citing its prior decision in *Pennsylvania Fire Insurance Company of Philadelphia v. Gold Issue Mining & Milling Company,* 243 U.S. 93 (1917).

Because the decision in *Mallory* relies on a defendant's statutory consent to personal jurisdiction, that case is inapposite to *Gulf Coast Bank & Trust Co.,* 717 Fed. Appx. at 398, wherein the court held that Louisiana state law did not expressly require consent to personal jurisdiction as a condition to doing business in the state.  Because Lubbock CU did not

to grant Louisiana courts authority to exercise jurisdiction; it does not inform any foreign entities that by registering to do business that they consent to jurisdiction." *See Gulf Coast Bank & Trust Co.,* 717 Fed. Appx. at 398 (citing La. R.S. § 13:3201 (personal jurisdiction over nonresidents).

"Louisiana law, therefore, does not require a foreign entity to consent to jurisdiction as a condition of doing business in the state. Absent state law explicitly requiring consent, courts do not consider 'appointment of an agent for process' to be 'a waiver of [the] right to due process protection.'" *Gulf Coast Bank & Trust Co.,* 717 Fed. Appx. at 398 (*citing Wenche Siemer*, 966 F.2d at 183); *see also Young o/b/o T.Y. v. United Rentals, Inc.,* 2018 WL 7324629 (W.D. La. 2018), *report and recommendation adopted,* 2019 WL 614547 (W.D. La. 2019). Therefore, Lubbock CU

---

expressly consent to in-state suits in Louisiana, *Mallory* does not support Louisiana CU's assertion of general jurisdiction over Lubbock CU.

Plaintiff also cites *Colonial Pipeline Co. v. Traigle,* 421 U.S. 100, 111 (1975), and La. R.S. 12:306, for the proposition that a foreign corporation that is registered to do business with the Louisiana Secretary of State has the power to sue and be sued in Louisiana courts. However, the *Colonial Pipeline* opinion states that those protections are given to foreign interstate corporations that are doing business in Louisiana – in that case by maintaining a pipeline within the state – and paying Louisiana taxes. *See Colonial Pipeline Co.,* 421 U.S. at 111.

Thus, *Colonial Pipeline Co.* does not stand for the proposition that a foreign company, that is not an interstate corporation, is subject to suit in Louisiana simply because it registered with the Louisiana Secretary of State, particularly where it never actually conducted any business in Louisiana. *Compare Wenche Siemer,* 966 F.2d at 183 ("[A] foreign corporation that properly complies with the Texas registration statute only consents to personal jurisdiction where such jurisdiction is constitutionally permissible.").

did not consent to personal jurisdiction in Louisiana simply by registering to do business in Louisiana.

Moreover, the fact that two of Lubbock CU's employees have worked remotely from Louisiana does not establish general jurisdiction in Louisiana. *See Diece-Lisa Industries, Incorporated,* 943 F.3d at 250  (three of 770 employees working remotely in the forum state did not create contacts that are "so continuous and systematic as to render [them] essentially at home" there); *see also Embry v. Hibbard Inshore, L.L.C.,* 803 Fed. Appx. 746, 748 (5th Cir. 2020).  Lubbock CU employed a full-time librarian, Maribel Castro ("Castro"), in September 2013.  Castro became a part-time Lecturer in Residence in September 2015 and moved to Louisiana for personal reasons between September 2015 and August 2016, working remotely from Louisiana until she retired from Lubbock CU in 2018.  ECF No. 29 at 2-3.  Lubbock CU also employed Donna Ellis ("Ellis") as an "adjunct" in August 2011.  Ellis became a part-time Lecturer in Residence in September 2013.  After September 2013, Ellis moved to Louisiana for personal reasons and performed her job duties remotely until her employment ended in August 2017.  ECF No. 29 at 2-3.

Louisiana CU has not alleged that Castro and Ellis were engaged in business for Lubbock CU in Louisiana, but instead only show that they worked for Lubbock CU, in Lubbock, remotely from their homes in Louisiana.  That contact with Louisiana is not substantial enough to create a general business presence for Lubbock CU in Louisiana.  *See Johnston*, 523 F.3d at 612-13 (two employees of a Canadian

company working from their homes in Texas did not create a general business presence in Texas).

Therefore, Louisiana CU has not met its heavy burden of establishing that Lubbock CU's contacts with Louisiana are the extensive, continuous, and systematic business contacts required to establish this Court's general jurisdiction over Lubbock CU.

### 3. This Court does not have specific jurisdiction over Lubbock CU.

Louisiana CU also contends this Court has specific jurisdiction over Lubbock CU. "Specific jurisdiction 'encompasses cases in which the suit arises out of or relates to the defendant's contacts with the forum.'"[5] *Diece-Lisa Industries, Incorporated,* 943 F.3d at 250 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "Specific jurisdiction exists when two circumstances are met: (1) 'a nonresident defendant has purposefully directed its activities at the forum state,' and (2) 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Diece-Lisa Industries, Incorporated,* 943 F.3d at 250 (quoting *Sangha v. Navig8 ShipManagement Private Ltd.,* 882 F.3d 96, 101 (5th Cir. 2018)).

---

[5] The Fifth Circuit also employs a three-step analysis to determine whether specific jurisdiction is present: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *See Carmona v. Leo Ship Management, Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). "If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a 'compelling case' that the assertion of jurisdiction is not fair or reasonable." *Carmona*, 924 F.3d at 193.

13

Courts across the country look to patent cases as persuasive authority when handling trademark disputes generally," and "specifically in regards to determining personal jurisdiction in declaratory judgment actions." *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2020 WL 1819885, at *8 (N.D. Tex. 2020) (quoting *Nana Joes, L.L.C. v. Microbiotic Health Foods, Inc.*, 2018 WL 905531, at *5 (E.D. Tex. 2018). Federal Circuit law governs the issue of personal jurisdiction in a declaratory action intimately related to patent law. *See Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed. Cir. 2003); *Alpha Creations, Inc.*, 2018 WL 654468, at *1.

"Claims in the declaratory judgment context must arise out of, or relate to, a defendant patentee's enforcement of the patents in suit." *Nursery Decals & More, Inc.*, 2020 WL 1819885, at *8 (citing *Alpha Creations, Inc.*, 2018 WL 654468, at *1), and *Avocent Huntsville Corp.*, 552 F.3d at 1332). "Because the nature of declaratory judgment actions in the patent and trademark contexts, which raise non-infringement, invalidity, or unenforceability issues, is 'to clear the air of infringement charges', the Federal Circuit has explained, '[s]uch a claim neither directly arises out of or relates to the making [or] selling . . . [of alleged] infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent." *Nana Joes, L.L.C. v. Microbiotic Health Foods, Inc.*, 2018 WL 905531, at *5 (E.D. Tex. 2018) (quoting *Avocent Huntsville Corp. v. Aten International Co., Ltd.,* , 1333–35 (Fed. Cir. 2008*), cert. den.*, 557 U.S. 904 (2009),

14

and *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 508–09 (E.D. La. 2010)); *see also Diece-Lisa Industries, Incorporated,* 943 F.3d at 250.

> In *Autogenomics, Inc.,* the court explained:
>
> "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness."

*Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009) (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1360-61 (Fed. Cir. 1998)). Therefore, "the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there." *Avocent Huntsville Corp.*, 552 F.3d at 1334 (citing *Breckenridge,* 444 F.3d at 1366). For example, "initiating judicial or extrajudicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent Huntsville Corp.*, 552 F.3d at 1334; *Alpha Creations, Inc. v. Daniel K. Fine Jewelry U.S.A., L.L.C.*, 2018 WL 654468, at *2 (S.D. Tex. 2018). In contrast to activities which relate to the enforcement or the defense of the validity of the relevant patents in the forum, "the defendant patentee's own commercialization activity does not reflect 'other activities' supporting specific

jurisdiction in a declaratory judgment action." *Avocent*, 552 F.3d at 1335; *Alpha Creations, Inc.*, 2018 WL 654468, at *2–3.

"In many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an 'infringement letter,' and the patentee may have little contact with the forum beyond this letter." *Autogenomics, Inc.*, 566 F.3d at 1020 (Fed. Cir. 2009) (citing *Red Wing Shoe Co,* 148 F.3d at 1359-61); *see also Avocent Huntsville Corp.*, 552 F.3d at 1333–35. "In a declaratory judgment action, the patentee sending cease-and-desist letters to the forum state is by itself insufficient to satisfy the jurisdictional requirement." *Red Wing Shoe Co.,* 148 F.3d at 1360; *see also See New World International, Inc. v. Ford Global Technologies, L.L.C.,* 859 F.3d 1032, 1038 (Fed. Cir. 2017). "'Other activities' are required in addition to a cease-and-desist letter in order for a patentee [or trademark-holder] to be subject to personal jurisdiction in the forum." *Alpha Creations, Inc.,* 2018 WL 654468, at *2 (citing *Campbell Pet Co. v. Miale,* 542 F.3d 879, 885 (Fed. Cir. 2008), and *Genetic Implant Systems, Inc. v. Core-Vent Corp.,* 123 F.3d 1455, 1458 (Fed. Cir. 1997)). "[*Red Wing Shoe*] explains that, even though the letters are 'purposefully directed' at the forum and the declaratory judgment action 'arises out of' the letters, letters threatening suit for patent infringement sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction' because to exercise jurisdiction in such a situation would not 'comport with fair play and

substantial justice.'" *Silent Drive, Inc. v. Strong Industries, Inc.,* 326 F.3d 1194, 1202 (Fed. Cir. 2003); *see also Avocent Huntsville Corp*, 552 F.3d at 1333.

However, "when 'the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.'" *Defense Distributed v. Grewal*, 971 F.3d 485, 494 (5th Cir. 2020), *cert. den.,* 141 S. Ct. 1736 (U.S. 2021) (cease-and-desist letter gave rise to causes of action for censorship and intentional interference with a contractual relationship) (citing *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 212 (5th Cir. 1999) (defendant's letters to plaintiff in forum state gave rise to claims for fraudulent misrepresentations and breach of fiduciary duty). "The defendant is purposefully availing himself of the privilege of causing a consequence in [the forum state]." *Wien Air Alaska, Inc.,* 195 F.3d at 213.

Louisiana CU contends that Lubbock CU's "cease and desist" letters to Louisiana CU, asking Louisiana CU to stop using its trademarked "LCU," establish Lubbock CU's contact with Louisiana. The cease and desist letters allege that Louisiana CU's use of "LCU" encroaches on Lubbock CU's trademark – a stylized "LCU" in gray and white on a blue background.[6] Louisiana CU alleges that Lubbock CU threatened to sue it in letters and in a July 7, 2023 telephone conversation

---

[6] Louisiana CU's "LCU" is blue, white, and orange.

between Dr. McDowell of Lubbock CU and Dr. Rick Brewer of Louisiana CU, Dr. McDowell.  ECF No. 1 at 7.

Lubbock CU sent five cease and desist letters to Louisiana CU: (1) a letter dated December 7, 2022 from attorney Perry Sims to Dr. Rick Brewer (ECF No. 22-3); (2) an undated letter from Dr. Scott McDowell to Dr. Rick Brewer (ECF No. 22-4); (3) a letter dated January 10, 2023 from attorney Perry Sims to Dr. Rick Brewer (ECF No. 22-5); (4) an undated letter (stamped "received" on February 27, 2023) from attorney Perry Sims to attorney Jonathan Stokes (ECF No. 22-6); (5) an undated letter (stamped "received" on February 27, 2023) adding an attachment[7] to the other letter received the same date, from attorney Perry Sims to attorney Jonathan Stokes; and (6) an undated letter to Dr. Rick Brewer from Dr. Scott McDowell (ECF No. 22-7).  Lubbock CU points out in its letters that it trademarked "LCU" for itself "several years ago" and renewed that trademark recently, on June 1, 2021.[8]  Lubbock CU

---

[7] The attachment is an Odessa, Texas (KALB) news article regarding a former coach from Louisiana CU.  Lubbock CU contends the article illustrates the confusion caused by Louisiana CU's use of "LCU."  ECF No. 22-7.

The article is titled "Former LCU soccer coach under investigation amid a series of allegations."  ECF No. 22-7.  The first sentence of the article states the coach was formerly employed by "Louisiana Christian" and last employed by UT Permian Basin.  The second and third sentences refer to the coach's winning seasons at "LCU."  ECF No. 22-7.

[8] The Trademark Official Gazette (6/1/2021) describes Lubbock CU's trademarked "LCU." ECF No. 22-4 at 2.

Lubbock CU's logo is gray and white on a blue background, with the letters "L" and "U" superimposed over the letter "C" and the letter "C" larger in size than the letters "L" and "U". ECF No. 22-4 at 2.

contends in each letter to Louisiana CU that Louisiana CU's use of "LCU" in its advertising, web site, sale of apparel, and other ways infringes on Lubbock CU's trademarked logo.  Lubbock CU asks Louisiana CU to cease using its "LCU" logo, claiming it is causing "confusion."  ECF Nos. 22-3, 22-4, 22-5, 22-6, 22-8.  In the fourth letter, Lubbock CU states that it is "also prepared to defend our right to our trademark if necessary."

Louisiana CU does not allege in its Complaint that it has a trademark on "LCU" that has been infringed by Lubbock CU.[9]  Nor does Louisiana CU contend that Lubbock CU's use of LCU has caused it injury, or that anything in Lubbock CU's cease and desist letters constitutes a tort against Louisiana CU.  Neither school has alleged the other school is selling "LCU" merchandise in colors other than its own school colors.

Louisiana CU has not shown that Lubbock CU has engaged in "other activities" directed at Louisiana.  Louisiana CU only contends that Lubbock CU has threatened

---

Louisiana CU's use of "LCU" is white, bordered in blue, bordered again in orange, and the letters are on a decline slant from left to right.  Thus, the claim is that Louisiana CU is using the same abbreviation – LCU – as Lubbock CU, rather than its trademark.

[9] Although Louisiana CU's responses to Lubbock CU's letters are not included in the record, Louisiana CU's complaint makes it clear that Louisiana CU believes it is not infringing on Lubbock CU's trademarked logo.  Louisiana CU shows it uses a picture of a building with a cross on the front of it and with "Louisiana Christian University" written in a stack next to it.  The entire logo is red, white, and blue.  ECF No. 1 at 4.  Louisiana CU contends it does not officially use "LCU" by itself as its school logo.  Louisiana CU also contends that it is referred to as "LCU" sometimes on its website and informally due to the inconvenience of saying "Louisiana Christian University" repetitively.

to sue it.  Yet when the cease and desist letters from Lubbock CU are examined, there is only one mention that Lubbock CU is "prepared to defend" its right to   its trademark "if necessary."  ECF No. 22-6 at 2.  And Louisiana CU alleges there was one verbal threat of a lawsuit in a phone call.  Lubbock CU otherwise does not appear to direct any activities to Louisiana.[10]  *See Compana, L.L.C. v. Emke,* 2004 WL 2058782, at *3 (N.D. Tex. 2004) ("[T]hreatened litigation through e-mails and phone calls are insufficient to confer specific jurisdiction over defendants in this declaratory judgment action.").

In a similar case, *American University System, Inc. v. American University*, 858 F. Supp. 2d 705, 714 (N.D. Tex. 2012), the American Public University System ("APUS") (a West Virginia business) sent cease and desist letters to the American University System ("AUS") (incorporated in the District of Columbia with its principal place of business in Texas), demanding it cease using the name "American University System" on the ground that it infringed on APUS's trademark.  The AUS then sued the APUS, seeking a declaratory judgment that it had not infringed on APUS's trademark by using "American University System."  The Court found that AUS had not shown the Texas court had specific personal jurisdiction over APUS, because AUS did not allege any injury arising from or directly related to APUS's use

---

[10] The Supreme Court has held that a "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Embry,* 803 Fed. Appx. at 749 (citing *Walden*, 571 U.S. at 285).

of the disputed marks in Texas or on the internet, or that APUS's conduct infringed any of AUS's rights. *See American University System, Inc.*, 858 F. Supp. 2d at 716.

Likewise, in *Expedite It AOG, L.L.C. v. Clay Smith Engineering, Inc.*, 2010 WL 2671314, at *4  (N.D. Tex. 2010), after the defendant sent plaintiff a cease and desist letter asserting a trademark right, the plaintiff sought a declaratory judgment of noninfringement under the Lanham Act.  The court refused to exercise specific jurisdiction over the defendant in a trademark dispute where the alleged infringer was not asserting trademark rights, and there was no other nexus between the plaintiff's claim for a declaration of non-infringement and the defendant's marketing of branded products on its website to residents of Texas.[11]

Because Louisiana CU has not established that Lubbock CU has minimum contacts with Louisiana, this Court does not have specific jurisdiction over Lubbock CU.  Lubbock CU's Motion to Dismiss (ECF No. 16) should therefore be granted.

---

[11] *Contrast, Carbon Six Barrels, L.L.C. v. Proof Research, Inc.*, 2022 WL 16727127, at *3 (M.D. La. 2022), *aff'd*, 83 F.4th 320 (5th Cir. 2023) (the court held that it has personal jurisdiction over the defendant, which sent a single cease-and-desist letter sent to the in-state plaintiff that was, by itself, the reason for bringing the defamation claim and was central to the plaintiff's unfair and deceptive acts alleged in the LUTPA claim); *Defense Distributed*, 971 F.3d at 493-496 (a cease and desist letter sent by a New Jersey state official, seeking to prevent plaintiff from publishing its files nationwide and threatening it with legal action with the plain intent of forcing it out of business, gave rise to causes of action for unconstitutional censorship and intentional interference with a contractual relationship and subjected the defendant to personal jurisdiction in Texas).

III.  **Conclusion**

Based on the foregoing, IT IS RECOMMENDED that Lubbock CU's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16) be GRANTED and that Louisiana CU"s Complaint be DISMISSED WTIHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ____24th____ day of April 2024.

Joseph H.L. Perez-Montes
United States Magistrate Judge